## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JAVIER BALDERAMA,

      Plaintiff,

vs.                                                                             No. CIV 21-1037 JB/JFR

SHANNON BULMAN, in her official capacity
as Judge for the First District Court of New
Mexico; MARY L. MARLOWE SOMMER, in
her official capacity as Chief Judge for the First
district Court of New Mexico; KRISTINA
BOGARDUS, in her official capacity as Judge
of the New Mexico Court of Appeals;
JACQUELINE MEDINA, in her official
capacity as Judge of the New Mexico Court of
Appeals; J. MILES HANISEE, in his official
capacity as Chief Judge of the New Mexico
Court of Appeals; RAUL TORREZ, in his
official capacity as Attorney General for the
State of New Mexico,[1] and BETINA G.
MCCRACKEN, in her official capacity as
Acting Director for the New Mexico Child
Support Enforcement Division,

      Defendants.

## MEMORANDUM OPINION AND ORDER OVERRULING THE PLAINTIFF'S OBJECTIONS AND ADOPTING THE MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on the Magistrate Judge's Proposed Findings

and Recommended Disposition, filed February 1, 2023 (Doc. 37)("PFRD").  Pursuant to rules 6(d)

and 72(b)(2) of the Federal Rules of Civil Procedure, the parties' objections were due no later than

February 20, 2023.  See Fed. R. Civ. P. 6(d), 72(b)(2).  Plaintiff Javier Balderama, who proceeds

---

[1]Defendant Attorney General Raul Torrez has been substituted automatically for his
predecessor, Hector Balderas.  See Fed. R. Civ. P. 25(d).

pro se, timely filed the Plaintiff's Objections to Proposed Findings and Disposition, filed February 15, 2023 (Doc. 38)("Objections").  The Defendants have not filed objections or a response to Balderama's Objections.  The Court has conducted its de novo review of the case, including a thorough review of the motions, responses, replies, the PFRD, and the Objections.  Based on this review and for the reasons discussed below, the Court concludes that Balderama's Objections to the PFRD lack a sound basis in the applicable law and in the relevant facts.  Accordingly, the Court will: (i) overrule Balderama's Objections; (ii) dismiss without prejudice the Plaintiff's Amended Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 and Request for Declaratory Relief Pursuant to 28 U.S.C. § 2201(a), filed February 4, 2022 (Doc. 7)("Amended Complaint"); (iii) grant in part and deny in part Defendants the Hon. Shannon Bulman and the Hon. Mary Marlow Sommers' Motion to Dismiss, filed April 11, 2022 (Doc. 13)("Bulman & Sommers MTD"); (iv) grant in part and deny in part Defendant the Hon. J. Miles Hanisee's Motion to Dismiss, filed May 9, 2022 (Doc. 24)("Hanisee MTD"); (v) dismiss as moot the Plaintiff's Motion for Summary Judgment, filed May 13, 2022 (Doc. 26)("SJ Motion"); and (vi) dismiss as moot the Plaintiff's Motion to Progress, filed January 17, 2023 (Doc. 33)("Progress Motion").

## PROCEDURAL BACKGROUND

On October 27, 2021, Balderama filed his Civil Rights Complaint Pursuant to 42 U.S.C. § 1983, (Doc. 1)("Complaint").  On November 29, 2021, the Honorable John F. Robbenhaar, United States Magistrate Judge for the United States District Court for the District of New Mexico entered a Memorandum Opinion and Order for Amended Complaint and Order to Show Cause (Doc. 4)("Show Cause Order").  In the Show Cause Order, Magistrate Judge Robbenhaar directs

Balderama to file an amended complaint and to show cause why the <u>Younger</u> abstention doctrine[2] does not bar his claims.  <u>See</u> Show Cause Order at 7.

On February 4, 2022, Balderama filed his Amended Complaint, in which he names as Defendants the Honorable Shannon Bulman, District Judge, First Judicial District, State of New Mexico; the Honorable Mary L. Marlowe Sommer, Chief District Judge, First Judicial District, State of New Mexico; the Honorable J. Miles Hanisee, Court of Appeals Judge for the State of New Mexico; New Mexico Attorney General Hector Balderas[3]; and Acting Director for the New Mexico Child Support Enforcement Division Betina G. McCracken.[4]  <u>See</u> Amended Complaint ¶¶ 23-27, at 5.  Balderama's Amended Complaint "seeks advice of this court, in the form of declaratory relief under 28 U.S.C. § 2201(a) clarifying his legal responsibilities as well as the responsibilities of the New Mexico Child Support Enforcement Division and the New Mexico state judiciary . . . ."  Amended Complaint ¶ 8, at 3.  Balderama alleges that he "is an

---

[2]As the Court discusses in more detail below, <u>Younger</u> abstention, named for the decision of the Supreme Court of the United States of America in <u>Younger v. Harris</u>, 401 U.S. 37 (1971), provides that "federal courts should not 'interfere with state court proceedings by granting equitable relief -- such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings --' when a state forum provides an adequate avenue for relief."  <u>Weitzel v. Div. of Occupational & Pro. Licensing of Dep't of Comm. of the State of Utah</u>, 240 F.3d 871, 875 (10th Cir. 2001)(quoting <u>Rienhardt v. Kelly</u>, 164 F.3d 1296, 1302 (10th Cir. 1999)).

[3]Defendant Attorney General Raul Torrez, successor to Defendant Attorney General Hector Balderas, is substituted.

[4]Although Balderama names the Honorable Kristina Bogardus and Jacqueline Medina, Judges for the Court of Appeals of New Mexico, as Defendants in his original Complaint, he does not name them in his Amended Complaint.  <u>Compare</u> Complaint ¶¶ 25-30, at 5, <u>with</u> Amended Complaint ¶¶ 23-27, at 5.  Plaintiff added Betina G. McCracken as a Defendant in his Amended Complaint.  Amended Complaint ¶ 27, at 5.

undocumented alien residing in Santa Fe, New Mexico."   Amended Complaint ¶ 4, at 2.

Balderama alleges that the State district court's imposition of child support obligations as set forth

in its adoption of the Langarcia v. Balderama, No. D-101-DM-2012-00080, Report and Decision

of Hearing Officer on Motion to Modify Child Support, filed April 1, 2020 (County of Santa Fe,

First Judicial District Court, State of New Mexico)("Child Support Order")[5] forces him either to

find work -- in violation of Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100

Stat. 3445, amended in scattered sections of 8 U.S.C. ("IRCA"), which makes it unlawful for an

employer to knowingly employ an "unauthorized alien," 8 U.S.C. § 1324a -- or otherwise to be

held in contempt.  See Amended Complaint ¶ 5, at 2.[6]  Balderama also alleges that the District

Court's Child Support Order's finding that his ongoing efforts to avoid any child support

obligation were in bad faith is a "speech chill injury" that violates his right under the First

Amendment to the Constitution of the United States of America to protected speech, and his right

---

[5]See Langarcia v. Balderama, No. D-101-DM-2012-00080, Report and Decision of Hearing Officer on Motion to Modify Child Support, filed April 1, 2020 (County of Santa Fe, First Judicial District Court, State of New Mexico); id., Objections to Illegal Child Support Ruling, filed April 14, 2020; id., Order Resolving Objections to Child Support Report and Decision, filed April 23, 2020; id., Motion to Clarify and Reconsider Illegal Written Child Support Ruling, filed May 11, 2020; id., Order Denying Motion to Clarify and Reconsider, filed May 13, 2020.  See also Leek v. Androski, No. 21-3165, 2022 WL 1134967, at *3 (10th Cir. April 18, 2022) (unpublished)(explaining that the court may refer to documents referenced in the complaint if they are central to the plaintiff's claims and may take judicial notice of court records in underlying judicial proceedings )(citing Gee v. Pacheco, 627 F.3d 1178, 1186 (10th Cir. 2010); Reed v. Heimgartner, 579 F. App'x 624, 625 (10th Cir. 2014)).

[6]See Langarcia v. Balderama, No. D-101-DM-2012-00080, Report and Decision of Hearing Officer Finding Respondent in Contempt of Court, Entering an Arrearage Judgment and Setting Compliance Hearing, filed September 3, 2019 ("Contempt Order"); id., Motion to Reconsider and Objections to Report and Decision of Hearing Officer Finding Respondent in Contempt of Court, Entering an Arrearage Judgment and Setting Compliance Hearing, filed September 16, 2019; id., Order Resolving Objections to Child Support Report and Decision, filed September 27, 2019.

under the Fourteenth Amendment to the Constitution of the United States to due process. Amended Complaint ¶ 10, at 3.  See U.S. Const. amends. I, XIV.  Balderama's Amended Complaint requests that the Court: (i) declare that State government representatives cannot use State power to punish an undocumented alien for failing to find employment, because doing so would be in violation of IRCA; (ii) issue an injunction to the New Mexico Child Support Enforcement Division stopping it from initiating contempt proceedings against undocumented aliens who fail to pay child support because of their failure to seek employment in violation of IRCA; (iii) issue an injunction to the New Mexico Child Support Enforcement Division stopping it from imputing employment income to undocumented aliens for purposes of calculating child support; (iv) issue an injunction against enforcing State court rulings that punish undocumented aliens for failing to find employment to pay child support; and (v) declare that Balderama's statement of opinion that the amount he owes in child support is "probably $0" is protected speech. Amended Complaint ¶¶ 97-101, at 19-20.

Mr. Balderas, for whom Mr. Torrez since has been substituted in this action, answered on April 1, 2022.  See Defendant Hector AG Balderas's Answer to Plaintiff's Amended Complaint for Permanent Injunctive and Declaratory Relief and Affirmative Defense, filed April, 1, 2022 (Doc. 11)("Balderas Answer").  Mr. Balderas raises an affirmative defense, asserting that the Court must dismiss Balderama's claims against Mr. Balderas, because the "Plaintiff's complaint contains absolutely no allegations concerning AG Balderas."  Balderas Answer at 7.  McCracken asserts the same affirmative defense in her answer to Balderama's Amended Complaint.  See Defendant Betina McCracken's Answer to Plaintiff's Amended Complaint for Permanent Injunctive and Declaratory Relief and Affirmative Defense at 7, filed May 23, 2022 (Doc. 30).  Judge Bulman, Judge Sommers, and Judge Hanisee also moved to dismiss Balderama's Amended Complaint for

failure to state a claim, as well as on the grounds that Balderama's requests for declaratory relief are improper, that the three Judges are entitled to judicial immunity, and that the <u>Younger</u> abstention and <u>Rooker</u>-<u>Feldman</u>[7] abstention doctrines apply.  <u>See</u> Bulman & Sommers MTD at 3-7; Hanisee MTD at 3-7.  Balderama has filed two additional motions for which Magistrate Judge Robbenhaar makes recommendations: (i) the SJ Motion, which requests that the Court enter summary judgment in Balderama's favor, <u>see</u> SJ Motion at 4; and (ii) the Progress Motion, which requests that the Court expedite its review of the case and pending motions, <u>see</u> Progress Motion at 1.

In the PFRD, Magistrate Judge Robbenhaar concludes that Balderama's Amended Complaint fails to state a claim for relief pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure against Mr. Torrez, Judge Bulman, Judge Sommer, Judge Hanisee and McCracken, and that judicial immunity and/or immunity under the Eleventh Amendment to the Constitution of the United States bar all of the § 1983 claims which Balderama alleges.  <u>See</u> PFRD at 9-14.  Magistrate Judge Robbenhaar therefore recommends that the Court dismiss with prejudice of all of Balderama's § 1983 claims against the Defendants.  <u>See</u> PFRD at 9-14.  Magistrate Judge Robbenhaar also concludes that the <u>Younger</u> abstention doctrine bars Balderama's request for injunctive and declaratory relief, and that the Court lacks subject-matter jurisdiction pursuant to rule 12(b)(1) of the Federal Rules of Civil Procedure.  <u>See</u> PFRD at 14-22.  Magistrate Judge Robbenhaar,

---

[7]The <u>Rooker</u>-<u>Feldman</u> abstention doctrine, named for two Supreme Court cases -- <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923)("<u>Rooker</u>") and <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983)("<u>Feldman</u>") -- prohibits federal district courts from exercising jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284 (2005).

therefore, recommends that the Court dismiss without prejudice all Balderama's claims against the Defendants seeking injunctive, declaratory, or other relief affecting the State of New Mexico district court child support proceedings for lack of subject-matter jurisdiction.  See PFRD at 14-22.  Finally, having determined that the Court should dismiss Balderama's Amended Complaint pursuant to rules 12(b)(1) and 12(b)(6), Magistrate Judge Robbenhaar recommends finding as moot Balderama's SJ Motion and Progress Motion.  See PFRD at 23.

## LAW REGARDING PRO SE LITIGANTS

When a party proceeds pro se, a court construes his or her pleadings liberally and holds him or her "to a less stringent standard than [that applied to] formal pleadings drafted by lawyers." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  "[I]f the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."  Hall v. Bellmon, 935 F.2d at 1110.  The Court will not, however, "assume the role of advocate for the pro se litigant."  Hall v. Bellmon, 935 F.2d at 1110.  "[P]ro se status does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure."  Ogden v. San Juan Cnty., 32 F.3d 452, 455 (10th Cir. 1994).

## LAW REGARDING
## OBJECTIONS TO PROPOSED FINDINGS AND RECOMMENDATIONS

District courts may refer dispositive motions to a Magistrate Judge for a recommended disposition.  See Fed. R. Civ. P. 72(b)(1) ("A magistrate judge must promptly conduct the required proceedings when assigned, without the parties' consent, to hear a pretrial matter dispositive of a claim or defense or a prisoner petition challenging the conditions of confinement."); 28 U.S.C.

§ 636(b)(1)(B).  Rule 72(b)(2) of the Federal Rules of Civil Procedure governs objections to a Magistrate Judge's recommended disposition: "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2).  See 28 U.S.C. § 636(b)(1).  When resolving objections to a Magistrate Judge's proposal, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).  Similarly, 28 U.S.C. § 636 provides:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1)(C).

"The filing of objections to a magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- that are at the heart of the parties' dispute."  United States v. 2121 East 30th Street, Tulsa Okla., 73 F.3d 1057, 1059 (10th Cir. 1996)("2121 East 30th Street")(quoting Thomas v. Arn, 474 U.S. 140, 147 (1985)).  As the United States Court of Appeals for the Tenth Circuit has noted, "the filing of objections advances the interests that underlie the Magistrate's Act,[8] including judicial efficiency."  2121 East 30th Street, 73 F.3d at 1059 (citing Niehaus v. Kan. Bar Ass'n, 793 F.2d 1159, 1165 (10th Cir.1986); United States v. Walters, 638 F.2d

---

[8]Congress enacted the Federal Magistrates Act, 28 U.S.C. §§ 631-39, in 1968.

947, 950 (6th Cir. 1981)).

The Tenth Circuit has held "that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." 2121 East 30th Street, 73 F.3d at 1060. "To further advance the policies behind the Magistrate's Act, [the Tenth Circuit], like numerous other circuits, ha[s] adopted 'a firm waiver rule' that 'provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions.'" 2121 East 30th Street, 73 F.3d at 1059 (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)). "[O]nly an objection that is sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute will advance the policies behind the Magistrate's Act." 2121 East 30th Street, 73 F.3d at 1060. In addition to requiring specificity in objections, the Tenth Circuit has stated that "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996). See United States v. Garfinkle, 261 F.3d 1030, 1030-31 (10th Cir. 2001)("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived."). In an unpublished opinion, the Tenth Circuit states that "the district court correctly held that [a petitioner] had waived [an] argument by failing to raise it before the magistrate." Pevehouse v. Scibana, 229 F. App'x 795, 796 (10th Cir. 2007)(unpublished).[9]

---

[9]Pevehouse v. Scibana is an unpublished opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored.

In <u>2121 East 30th Street</u>, the Tenth Circuit, in accord with other Courts of Appeals,

expanded the waiver rule to cover objections that are timely but too general.  See <u>2121 East 30th</u>

<u>Street</u>, 73 F.3d at 1060. The Supreme Court of the United States of America -- in the course of

approving the United States Court of Appeals for the Sixth Circuit's use of the waiver rule -- has

noted:

> It does not appear that Congress intended to require district court review of a
> magistrate's factual or legal conclusions, under a de novo or any other standard,
> when neither party objects to those findings.  The House and Senate Reports
> accompanying the 1976 amendments do not expressly consider what sort of review
> the district court should perform when no party objects to the magistrate's report.
> See S. Rep. No. 94-625, pp. 9-10 (1976)(hereinafter Senate Report); H.R. Rep. No.
> 94-1609, p. 11 (1976), U.S. Code Cong. & Admin. News 1976, p. 6162 (hereinafter
> House Report).  There is nothing in those Reports, however, that demonstrates an
> intent to require the district court to give any more consideration to the magistrate's
> report than the court considers appropriate.  Moreover, the Subcommittee that
> drafted and held hearings on the 1976 amendments had before it the guidelines of
> the Administrative Office of the United States Courts concerning the efficient use
> of magistrates. Those guidelines recommended to the district courts that "[w]here
> a magistrate makes a finding or ruling on a motion or an issue, his determination
> should become that of the district court, unless specific objection is filed within a
> reasonable time."  See Jurisdiction of United States Magistrates, Hearings on S.
> 1283 before the Subcommittee on Improvements in Judicial Machinery of the
> Senate Committee on the Judiciary, 94th Cong., 1st Sess., 24 (1975)(emphasis
> added)(hereinafter Senate Hearings).  The Committee also heard Judge Metzner of
> the Southern District of New York, the chairman of a Judicial Conference
> Committee on the administration of the magistrate system, testify that he personally
> followed that practice.  See id., at 11 ("If any objections come in, . . . I review [the

---

However, if an unpublished opinion or order and judgment has persuasive value
with respect to a material issue in a case and would assist the court in its disposition,
we allow a citation to that decision.

<u>United States v. Austin</u>, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court finds that <u>Pevehouse v.</u>
<u>Scibana</u>, <u>Goings v. Sumner Cnty. Dist. Atty's Off.</u>, 571 F. App'x 634 (10th Cir. 2014), <u>Hunter v.</u>
<u>Hirsig</u>, 660 F. App'x 711 (10th Cir. 2016), <u>Reed v. Heimgartner</u>, 579 F. App'x 624 (10th Cir.
2014), and <u>Leek v. Androski</u>, No. 21-3165, 2022 WL 1134967 (10th Cir. April 18, 2022), have
persuasive value with respect to a material issue, and will assist the Court in its disposition of this
Memorandum Opinion and Order.

record] and decide it.  If no objections come in, I merely sign the magistrate's order.").  The Judicial Conference of the United States, which supported the de novo standard of review eventually incorporated in § 636(b)(1)(C), opined that in most instances no party would object to the magistrate's recommendation, and the litigation would terminate with the judge's adoption of the magistrate's report.  See Senate Hearings, at 35, 37.  Congress apparently assumed, therefore, that any party who was dissatisfied for any reason with the magistrate's report would file objections, and those objections would trigger district court review.  There is no indication that Congress, in enacting § 636(b)(1)(C), intended to require a district judge to review a magistrate's report to which no objections are filed.  It did not preclude treating the failure to object as a procedural default, waiving the right to further consideration of any sort.  We thus find nothing in the statute or the legislative history that convinces us that Congress intended to forbid a rule such as the one adopted by the Sixth Circuit.

Thomas v. Arn, 474 U.S. at 150-52 (footnotes omitted).

The Tenth Circuit also has noted, "however, that '[t]he waiver rule as a procedural bar need not be applied when the interests of justice so dictate.'"  2121 East 30th Street, 73 F.3d at 1060 (quoting Moore v. United States, 950 F.2d at 659 ("We join those circuits that have declined to apply the waiver rule to a pro se litigant's failure to object when the magistrate's order does not apprise the pro se litigant of the consequences of a failure to object to findings and recommendations.")).  Cf. Thomas v. Arn, 474 U.S. at 154 ("Any party that desires plenary consideration by the Article III judge of any issue need only ask.  [A failure to object] does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a de novo or any other standard.").  In 2121 East 30th Street, the Tenth Circuit noted that the district judge had decided sua sponte to conduct a de novo review despite the lack of specificity in the objections, but the Tenth Circuit held that it would deem the issues waived on appeal, because it would advance the interests underlying the waiver rule.  See 73 F.3d at 1060-61 (citing cases from other courts of appeals where district courts elected to address merits despite potential application of waiver rule, but courts of appeals opted to enforce waiver rule).

Where a party files timely and specific objections to the Magistrate Judge's PFRD, "on . . . dispositive motions, the statute calls for a de novo determination, not a de novo hearing." United States v. Raddatz, 447 U.S. 667, 674 (1980).  The Tenth Circuit has stated that a de novo determination, pursuant to 28 U.S.C. § 636(b), "requires the district court to consider relevant evidence of record and not merely review the magistrate judge's recommendation."  In re Griego, 64 F.3d 580, 583-84 (10th Cir. 1995).  The Supreme Court has noted that, although a district court must make a de novo determination of the objections to recommendations under 28 U.S.C. § 636(b)(1), the district court is not precluded from relying on the Magistrate Judge's PFRD.  See United States v. Raddatz, 447 U.S. at 676 ("[I]n providing for a 'de novo determination' rather than de novo hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." (no citation given for quotation)); Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cnty., Okla., 8 F.3d 722, 724-25 (10th Cir. 1993)(holding that the district court's adoption of the Magistrate Judge's "particular reasonable-hour estimates" is consistent with a de novo determination, because "the district court 'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate" (quoting 28 U.S.C. § 636(b)(1))(emphasis in Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cnty., Okla. but not in 28 U.S.C. § 636(b)(1))).  "'Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations.'"  Andrews v. Deland, 943 F.2d 1162, 1170 (10th Cir. 1991)(quoting United States v. Raddatz, 447 U.S. at 676).

Where no party objects to the Magistrate Judge's PFRD, the Court has, as a matter of course in the past and in the interests of justice, reviewed the Magistrate Judge's recommendations.  In

<u>Workheiser v. City of Clovis</u>, No. CIV 12-0485 JB/GBW, 2012 WL 6846401 (D.N.M. December 28, 2012)(Browning, J.), the Court conducted a review even where the plaintiff failed to respond to the Magistrate Judge's PFRD, although the Court determined that the plaintiff "has waived his opportunity for the Court to conduct review of the factual and legal findings in the PFRD."  2012 WL 6846401, at *3.  The Court generally does not, however, review the Magistrate Judge's PFRD de novo, and determine independently necessarily what it would do if the issues had come before the Court first, but rather adopts the PFRD where "[t]he Court cannot say that the Magistrate Judge's recommendation . . . is clearly erroneous, arbitrary, [obviously][10] contrary to law, or an abuse of discretion."  <u>Workheiser v. City of Clovis</u>, 2012 WL 6846401, at *3.  This review, which

---

[10]The Court previously used as the standard for review when a party does not object to the Magistrate Judge's PFRD whether the recommendation is "clearly erroneous, arbitrary, contrary to law, or an abuse of discretion," thus omitting "obviously" in front of "contrary to law."  <u>Solomon v. Holder</u>, No. CIV 12-1039 JB/LAM, 2013 WL 499300, at *4 (D.N.M. January 31, 2013)(Browning, J.)(adopting the recommendation to which there was no objection, stating: "The Court determines that the PFRD is not clearly erroneous, arbitrary, contrary to law, or an abuse of discretion, and accordingly adopts the recommendations therein.");  <u>O'Neill v. Jaramillo</u>, No. CIV 11-0858 JB/GBW, 2013 WL 499521, at *7 (D.N.M. January 31, 2013)(Browning, J.)("Having reviewed the PRFD under that standard, the Court cannot say that the Magistrate Judge's recommendation is clearly erroneous, arbitrary, contrary to law, or an abuse of discretion.  The Court thus adopts Judge Wormuth's PFRD.")(citing <u>Workheiser v. City of Clovis</u>, 2012 WL 6846401, at *3); <u>Galloway v. JP Morgan Chase & Co.</u>, No. CIV 12-0625 JB/RHS, 2013 WL 503744, at *4 (D.N.M. January 31, 2013)(Browning, J.)(adopting the Magistrate Judge's recommendations upon determining that they were not "clearly contrary to law, or an abuse of discretion.").  The Court concludes that "contrary to law" does not reflect accurately the deferential standard of review that the Court intends to use when there is no objection.  Finding that a Magistrate Judge's recommendation is contrary to law would require the Court to analyze the Magistrate Judge's application of law to the facts or the Magistrate Judge's delineation of the facts -- in other words performing a de novo review, which is required only when a party objects to the recommendations.  The Court concludes that adding "obviously" better reflects that the Court is not performing a de novo review of the Magistrate Judges' recommendations.  Going forward, therefore, the Court will, as it has done for some time now, review Magistrate Judges' recommendations to which there are no objections for whether the recommendations are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion.

is deferential to the Magistrate Judge's work when there are no objections, nonetheless provides some review in the interest of justice, and is more consistent with the waiver rule's intent than no review at all or a full-fledged review.  Accordingly, the Court considers this standard of review appropriate.  See Thomas v. Arn, 474 U.S. at 151 ("There is nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate's report than the court considers appropriate.").  The Court is reluctant to have no review at all if its name is going to go at the bottom of the order adopting the Magistrate Judge's PFRD.

## ANALYSIS

The Court overrules Balderama's Objections, and adopts in part Magistrate Judge Robbenhaar's conclusions in the PFRD.  The Court first considers Magistrate Judge Robbenhaar's conclusions and Balderama's objections regarding the Younger abstention doctrine's applicability. The Court adopts Magistrate Judge Robbenhaar's recommendations and concludes that Younger abstention applies to Balderama's claims for declaratory and injunctive relief, which are his only claims for relief.  The Court considers next Magistrate Judge Robbenhaar's recommendations and Balderama's Objections regarding the motions to dismiss for failure to state a claim under rule 12(b)(6).  The Court determines that, because the Court dismisses Balderama's claims for declaratory and injunctive relief under Younger, it must dismiss his claims without prejudice for lack of subject-matter jurisdiction, and will not rule on the merits of the motions to dismiss under rule 12(b)(6).  See Goings v. Sumner Cnty. Dist. Atty's Off., 571 F. App'x 634, 637 (10th Cir. 2014)(announcing that it is "improper for the district court to rule on the merits of [a plaintiff's] Complaint under Rule 12(b)(6), where the conditions were satisfied for application of *Younger* abstention").  Accordingly, the Court does not adopt Magistrate Judge Robbenhaar's

recommendation to dismiss with prejudice Balderama's § 1983 claims under rule 12(b)(6), but the Court will address Balderama's objections with respect to those recommendations.

## I.   THE COURT OVERRULES BALDERAMA'S OBJECTIONS REGARDING HIS REQUESTS FOR DECLARATORY AND INJUNCTIVE RELIEF.

In his Objections, Balderama affirms that he seeks: (i) relief from the State district court's Child Support Order; (ii) to thwart the State's attempts to enforce his child support obligations with future civil enforcement proceedings; and (iii) to stop current and future chilling of his speech.  See Objections at 5, 18.  To that end, Balderama requests that the Court declare that State government representatives cannot use State power to punish an undocumented alien for failing to find employment, because doing so would violate IRCA.  See Amended Complaint ¶ 97, at 19; Objections at 18.  Balderama also requests that the Court declare that his statement of opinion that the amount he owes in child support is "probably $0" is protected speech.  Amended Complaint ¶ 101, at 20; Objections at 18.  Finally, Balderama requests that the Court issue three injunctions: (i) to the New Mexico Child Support Enforcement Division prohibiting it from initiating contempt proceedings when an undocumented noncitizen may not find employment to pay child support; (ii) to the New Mexico Child Support Enforcement Division prohibiting them from imputing employment income for undocumented noncitizens when calculating child support; and (iii) against enforcing state court rulings that punish undocumented noncitizens who do not find employment to pay child support.[11]   See Amended Complaint ¶¶ 98-100, at 19-20.

---

[11]Balderama states in his Objections that "Plaintiff's Amended Complaint does not request injunctive relief against judges, so Plaintiff makes no further comments about the magistrate's refusal to grant him injunctive relief against judges."  Objections at 1.  Balderama, therefore, has waived appellate review as to this issue.  See 2121 East 30th Street, 73 F.3d at 1059-60.  The Court, nevertheless, has reviewed Magistrate Judge Robbenhaar's findings and recommendations regarding Judge Bulman, and determines that his findings and recommendations are not clearly

In the PFRD, Magistrate Judge Robbenhaar concludes that the Court is without jurisdiction to review Balderama's request for declaratory and injunctive relief pursuant to the Younger abstention doctrine.  See PFRD at 14-22.  He concludes that the Child Support Order and child support enforcement proceedings fall squarely within the civil proceedings for which Younger abstention is appropriate, i.e., that the child support proceedings from which Balderama seeks relief were ongoing at the time he filed his federal action, that they involve civil enforcement proceedings, and that they involve a civil action implicating important state interests.  See PFRD at 14-22.  Magistrate Judge Robbenhaar concludes additionally that Balderama had an adequate opportunity in the State court proceedings to raise his federal claims and that Balderama has not met the "heavy burden" of demonstrating that the underlying state court proceedings were undertaken in bad faith.  PFRD at 14-22.

In his Objections, Balderama argues that Magistrate Judge Robbenhaar concludes improperly that the Younger abstention doctrine applies and that it precludes the Court from exercising jurisdiction over Balderama's request for declaratory and injunctive relief.   See Objections at 3-11.  Balderama argues that the underlying State court proceedings at issue are not ongoing for Younger abstention purposes and that child support proceedings do not fall within one of the three exceptional categories of proceedings that the Supreme Court articulated in Sprint Communications, Inc. v. Jacobs, 571 U.S. 69, 70 (2013)("Sprint").  See Objections at 3-11.  He further argues that there are no enforcement proceedings currently pending against him and that proceedings setting child support are not civil enforcement proceedings.  See Objections at 3-11.

---

erroneous, arbitrary, obviously contrary to law, or an abuse of discretion.  See Workheiser v. City of Clovis, 2012 WL 6846401, at *3.

Balderama asserts that, even if the State court proceedings do fall properly within one of the exceptional categories that Sprint discusses, that the Defendants have acted in bad faith, thus overcoming the presumption of Younger abstention. See Objections at 3-11.  Last, addressing the factors established in Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982)("Middlesex"), Balderama asserts that the State courts do not provide an adequate forum to hear his claims. See Objections at 3-11.

As Magistrate Judge Robbenhaar explains in the PFRD, the Tenth Circuit has ruled that Younger abstention is appropriate when the federal proceedings at issue would "interfere with an ongoing state judicial proceeding" that "implicates important state interests" and "that affords an adequate opportunity raise the federal claims." J.B. ex rel. Hart v. Valdez, 186 F.3d 1280, 1291 (10th Cir. 1999)(citing Middlesex, 457 U.S. at 432; Taylor v. Jaquez, 126 F.3d 1294, 1297 (10th Cir. 1997); Seneca-Cayuga Tribe v. Oklahoma ex rel. Thompson, 874 F.2d 709, 711 (10th Cir. 1989)).  The Supreme Court in Sprint, however, clarified that "Younger extends to . . . three 'exceptional circumstances' . . . but no further."  571 U.S. at 70.  Specifically, Younger applies to the following "three categories of state cases: (1) 'state criminal proceedings,' (2) 'civil enforcement proceedings' and (3) 'civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions.'"  Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC, 953 F.3d 660, 670 (10th Cir. 2020)(quoting Sprint, 571 U.S. at 73). The Supreme Court in Sprint also clarified that the three Middlesex conditions are not dispositive, but are instead additional factors that the federal court appropriately considers before invoking Younger.  Sprint, 571 U.S. at 81.

In Hunter v. Hirsig, 660 F. App'x 711, 714-17 (10th Cir. 2016)("Hunter"), the Tenth Circuit applies the three Sprint categories as a sub-set of its Younger analysis to determine whether

there are "ongoing state administrative proceedings."  Hunter, 660 F. App'x at 715.  See Dawson v. Dylla, No. 21-1225, 2021 WL 5232251, at *5 (10th Cir. November 10, 2021)(explaining that Younger abstention applies, and that a federal court therefore must abstain from hearing the case, when the three Younger conditions are met (quoting Weitzel v. Div. of Occupational & Pro. Licensing of Dep't of Comm., 240 F.3d at 875)).  The Tenth Circuit in Hunter explains that "[t]he first condition -- ongoing state administrative proceedings -- involves two subparts: the proceedings must be *ongoing* and they must be the *type* of proceedings afforded *Younger* deference," where the three Sprint categories define "type."  Hunter, 660 F. App'x at 715 (emphasis in original).

The timeline of relevant events is as follows:

On November 28, 2019, Balderama appealed the State district court's Contempt Order. See Notice of Appeal, Langarcia v. Balderama, No. A-1-CA-38571, (N.M. Ct. App. Nov . 18, 2019).  On May 22, 2020, Balderama appealed the State district court's Child Support Order.  See Notice of Appeal, Langarcia v. Balderama, No. A-1-CA-39060 (N.M. Ct. App. May 22, 2020). On September 24, 2020, the Court of Appeals of New Mexico consolidated Balderama's appeals. See Order Consolidating Appeals, Langarcia v. Balderama, No. A-1-CA-38571 (N.M. Ct. App. Sept. 24. 2020).  On September 30, 2021, the Court of Appeals of New Mexico entered a Memorandum Opinion vacating and remanding the Contempt Order and otherwise affirming the district court's Child Support Order.  See Langarcia v. Balderama, 2021 WL 4480901, ¶ 25, at *5.[12]  On October 27, 2021, Balderama initiated proceedings before the Court by filing his

---

[12]As to the Contempt Order, the Court of Appeals of New Mexico explained:

Father argues he was entitled to counsel during the civil contempt proceedings because his case hinged on his ability to comply, he faced legal counsel for the State, he had an abnormally complex case, and the current procedures did not provide fair process.

Our Supreme Court has determined that "the due process clause of the [F]ourteenth [A]mendment does not require the appointment of counsel in every case where an indigent faces the possibility of imprisonment if found to be in civil contempt for failure to comply with an order of support." *State ex rel. Dep't of Human Servs. v. Rael*, 1982-NMSC-042, ¶ 15, 97 N.M. 640, 642 P.2d 1099. However, the district court must make a case-by-case evaluation of the need for counsel in such proceedings. *Id.* ¶ 16. In evaluating an indigent party's request for counsel, the district court must consider "the indigent's ability to understand the proceeding, the complexity of the legal and factual issues, and the defenses that might be presented." *Id.* ¶ 16. In this case, the district court's order does not demonstrate that it considered these factors in response to Father's request for counsel. We therefore vacate the district court's order of contempt and remand the case for further proceedings consistent with this opinion. Because we reverse and remand this case on the basis of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, we need not consider Father's other claims regarding the order of contempt.

Langarcia v. Balderama, 2021 WL 4480901, ¶¶ 6-7, at *2 (alterations in original). As to the Child Support Order, the Court of Appeals of New Mexico explained:

Father next argues that the requirement from the district court that he find work violates the Immigration Reform and Control Act of 1986 (IRCA). We construe Father's argument to be that because he is not authorized by IRCA to work in the United States, he cannot earn income and thus, should not be required to pay child support.

As the district court noted, and our own review confirms, Father misconstrues IRCA. Under IRCA, it is unlawful for an employer to knowingly employ an "unauthorized alien," which is a noncitizen or nonnational who is not authorized to work based on IRCA's requirements. 8 U.S.C. §§ 1101(a)(3); 1324a(1)(A), (h)(3). Employers who violate IRCA may face civil fines and criminal prosecution. 8 U.S.C. § 1324a(f),(g). ICRA does not subject unauthorized aliens who seek or obtain employment in the United States to criminal or civil sanctions. An unauthorized alien who works without authorization may be subject to criminal prosecution only if he knowingly uses forged, counterfeit, altered or falsely-made documents to obtain employment. 8 U.S.C. § 1324c(a); 18 U.S.C. § 1546(a). Thus, an unauthorized alien can work in the United States without risk

Complaint.  See Complaint ¶¶ 1-84, at 1-15.  On November 23, 2021, Balderama filed a petition

for writ of certiorari with the Supreme Court of New Mexico.  See Notice, Langarcia v. Balderama,

No. S-1-SC-39055 (N.M. Nov. 23, 2021).   On January 11, 2022, the Supreme Court of New

Mexico entered an Order denying the petition for writ of certiorari.  See Order, Langarcia v.

Balderama, No. S-1-SC-39055 (N.M. Jan. 11, 2022).[13]

---

of criminal punishment, even if such employment is inconsistent with the
employer's restrictions under federal immigration law.

Father cites to *Gonzales v. Performance Painting Inc.*, 2013-NMSC-021,
¶ 40, 303 P.3d 802, to argue that "making an illegal job offer [is] a ruse when [the]
employer knew or should have known of the injured worker's undocumented
status."  In *Gonzales*, our Supreme Court held that "employers who cannot
demonstrate [a] good faith compliance with federal law in the hiring process cannot
use their workers' undocumented status as a defense to continued payment of
modifier benefits under the Workers' Compensation Act."  *Id.* ¶ 1.  *Gonzales* does
not support Father's assertion.

Because Father fails to cite authority to support his assertion that it is illegal
for him to work, he cannot earn income and thus, cannot be required to pay child
support, we assume there is none and decline to further address this argument.  *See
In re Adoption of Doe*, 1984-NMSC-024, ¶ 2.

Langarcia v. Balderama, 2021 WL 4480901, ¶¶ 9-12, at *2-3 (alterations in original).

[13]Given the foregoing timeline, Magistrate Judge Robbenhaar concludes that the Rooker-
Feldman abstention doctrine does not apply, because, soon after Balderama initiated proceedings
before the Court, and with his time for State court appellate proceedings not having expired,
Balderama petitioned for a writ of certiorari before the Supreme Court of New Mexico as to the
Child Support Order, such that his State suit could not be considered final during the pendency of
the proceedings before the Court.  See PFRD at 15 n.16; Guttman v. Khalsa, 446 F.3d 1027, 1031-
32 (10th Cir. 2006)(explaining that plaintiff filed his federal suit while his petition for certiorari to
the Supreme Court of New Mexico was pending such that his State suit was not final).  Balderama
makes no objections to this finding.  Objections at 3.  Balderama, therefore, has waived appellate
review as to this issue.  See 2121 East 30th Street, 73 F.3d at 1059-60.  The Court, nevertheless,
has reviewed Magistrate Judge Robbenhaar's findings and recommendations regarding the
Rooker-Feldman doctrine, and determines that his findings and recommendations are not clearly
erroneous, arbitrary, obviously contrary to law, or an abuse of discretion.  See Workheiser v. City
of Clovis, 2012 WL 6846401, at *3.

Despite Balderama's concession regarding the nonfinal and ongoing nature of the Child Support Order such that the <u>Rooker</u>-<u>Feldman</u> abstention doctrine does not apply, <u>see supra</u>, at 20 n.13, Balderama nonetheless reargues in his Objections that the underlying state proceedings were not ongoing when he initiated his federal action for purposes of <u>Younger</u> abstention.  <u>See</u> Objections at 5-6.  In support, Balderama argues that the Contempt Order which the Court of Appeals of New Mexico remanded relates to a May 29, 2018, child support order and not to the Child Support Order from which he seeks relief here.[14]  <u>See</u> Objections at 5-6.  Balderama argues, therefore, that because there are no newly initiated or ongoing civil enforcement proceedings currently pending in State court and/or related to the Child Support Order at issue, the underlying civil enforcement proceedings cannot be considered ongoing.  <u>See</u> Objections at 5-6.  Balderama argues further that the underlying child support proceedings, when considered separately from enforcement proceedings, are not civil enforcement proceedings as <u>Sprint</u> contemplates.  <u>See</u> Objections at 5-6.

The underlying State court proceedings were ongoing at the time Balderama initiated his proceedings before the Court.  According to the Tenth Circuit, a State proceeding ends when the time for appeal has run.  <u>See</u> <u>Hunter</u>, 660 F. App'x at 715 (citing <u>Bear v. Patton</u>, 451 F.3d 639 (10th Cir. 2006)("[I]f a lower state court issues a judgment and the losing party allows the time for

---

[14]On July 28, 2022, the Human Services Department, Child Support Enforcement Division, sought to withdraw its 2018 and 2019 orders to show cause based on the Court of Appeals of New Mexico's remand, explaining that it no longer wished to pursue civil contempt against Balderama.  <u>See</u> <u>Langarcia v. Balderama</u>, No. D-101-DM-2012-00080, Motion to Withdraw Motion for Order to Show Cause and Quash Amended Order to Show Cause and Subpoena, filed July 28, 2022.  The State district court granted the motion on August 3, 2022.  <u>See</u> <u>Langarcia v. Balderama</u>, No. D-101-DM-2012-00080, Order Withdrawing Motion for Order to Show Cause, Quashing Amended Order to Show Cause and Amended Subpoena.

appeal to expire, then the state proceedings have ended.")).  As the Tenth Circuit notes, however, the Supreme Court has recognized that "'regardless of when [a State court's] judgment became final, . . . a necessary concomitant of *Younger* is that a party in [the federal plaintiff's] posture must exhaust his state appellate remedies before seeking relief in the [federal] District Court . . . .'" Hunter 660 F. App'x at 715 (quoting Huffman v. Pursue, Ltd., 420 U.S. 592, 608 (1975)) (alterations in Hunter but not in Huffman v. Pursue, Ltd.).  Here, it is undisputed that Balderama's State proceedings had not ended at the time he initiated proceedings before the Court, because the time for appeal had not yet expired nor had Balderama exhausted his State appellate remedies.  To be clear, Balderama timely filed a petition for writ of certiorari regarding the Child Support Order in furtherance of his State court proceedings on November 23, 2021, four weeks after he initiated proceedings in this Court.  Balderama's argument that his State proceedings ended before he initiated proceedings before the Court, therefore, necessarily fails.[15]

Additionally, Balderama's reliance on the absence of newly initiated civil enforcement proceedings against him related to the Child Support Order does not take into account the relief Balderama requests explicitly from the Court, i.e., to thwart any of the State's attempts to enforce his child support obligations with future civil contempt proceedings.  Balderama's argument also

---

[15]The State court did not quash the contempt proceedings -- which the New Mexico Human Services Department, Child Support Enforcement Division initiated against Balderama and which were the subject of the Contempt Order that Balderama appealed to the Court of Appeals of New Mexico -- until August 3, 2022, approximately ten months after Balderama initiated proceedings before the Court.  Additionally, as Magistrate Judge Robbenhaar notes in the PFRD, the underlying custody and child support case remains open in State district court.  See Progress Motion at 1 (asserting as of January 17, 2023, that Balderama's State case continues to be heard); Docket Report in Langarcia v. Balderama, No. D-101-DM-2012-00080 (showing parentage, custody and child support case commenced on January 27, 2012, and remains open).

overlooks that the contempt power lies at the core of the administration of a State's judicial system and thereby involves orders uniquely related to the State courts' ability to perform their judicial functions.  See Juidice v. Vail, 430 U.S. 327, 335 (1976)(holding that the district court should have abstained under Younger where plaintiff sought to enjoin the use of civil contempt procedures authorized by State law, because the contempt power lies at the core of the administration of a State's judicial system).  The Supreme Court explained:

> A State's interest in the contempt process, through which it vindicates the regular operation of its judicial system, so long as that system itself affords the opportunity to pursue federal claims within it, is surely an important interest.  Perhaps it is not quite as important as is the State's interest in the enforcement of its criminal laws, *Younger*, or even its interest in the maintenance of a quasi-criminal proceeding such as was involved in *Huffman*.  But we think it is of sufficiently great import to require application of the principles of those cases.  The contempt power lies at the core of the administration of a State's judicial system.

Juidice v. Vail, 430 U.S. at 335.  Because of this important interest, and because the plaintiff in that case had an opportunity to raise any federal claims in State court, the Supreme Court held that abstention was appropriate.  See Juidice v. Vail, 430 U.S. at 337.  See also Trump v. James, No. 1:21-cv-1352 (BKS/CFH), 2022 WL 1718951, at *10 (N.D.N.Y. May 27, 2022)(Sannes, J.) (explaining that Younger precludes federal courts from enjoining or otherwise challenging the processes by which a State compels compliance with its judgments and from interfering with State court proceedings that fit one of Sprint's three categories, such as contempt proceedings); Jackson v. Nev. DHHS, No. 2:17-cv-03040-JCM-NJK, 2018 WL 8367502, *2 n.4 (D. Nev. January 17, 2018)(Koppe, M.J.)(explaining that family court proceedings involving the State's ongoing efforts to enforce its child support orders -- including through jail time and other criminal sanctions -- fall within the latter two categories of cases that Sprint identifies).

Moreover, Balderama's argument that child support proceedings, viewed separately from enforcement proceedings, are not an exceptional proceeding that Sprint contemplates lacks a sound basis in the applicable law and relevant facts.  To the contrary, the breadth of consensus among district courts and Courts of Appeal demonstrates that direct challenges to child custody and support orders, and related proceedings, as is the case here, fall into Sprint's third category of exceptional cases, i.e., civil proceedings that involve orders uniquely in furtherance of a State court's ability to perform its judicial functions.  See Dawkins v. Staley, No. 1:22-CV-299, 2023 WL 1069745, at *4 (M.D.N.C. January 27, 2023)(Schroeder, C.J.)(concluding that the plaintiff's federal lawsuit, which was related to State court child support proceedings, falls into Sprint's third category, because it implicates how North Carolina courts manage their child support proceedings -- a subject in which the states have an especially strong interest); Fulmer v. South Carolina, No. 1:22-cv-4178-MGL-JDA, 2022 WL 18135241, at *4, n.2 (D.S.C. December 2, 2022)(Austin, M.J.)(concluding that, to the extent the plaintiff is involved in ongoing State family court proceedings, Younger abstention applies to prevent significant interference with and/or enjoining ongoing State family court proceedings); Gibson v. Lopez, No. 21-cv-02610-MJM-NYW, 2022 WL 2158986, at *6 (D. Colo. June 15, 2022)(Wang, M.J.)(concluding that actions "borne of an ongoing domestic relations matter within the jurisdiction of the" State court and which relate to the child support orders negotiated in and supervised by that court fall within the category of "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions")(collecting cases); Lamb v. Washington, No. 4:20-cv-01285-P-BP, 2021 WL 4027736, at *3-4 (N.D. Tex. August 17, 2021)(Ray, M.J.)(concluding that the court should abstain from considering the plaintiff's federal claim seeking relief from a custody decree, because the case implicates Sprint's third "exceptional circumstance," i.e., "civil

proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to

perform their judicial functions"); Rosberg v. Rosberg, 8:21CV152, 2021 WL 2210602, at *2-3

(D. Neb. June 1, 2021)(Kopf, S.J.)(concluding that the plaintiff's federal court allegations of

judicial bias and prejudice against State court judge were intertwined inextricably with rulings in

underlying divorce and child support case, and that Younger abstention applied, because orders

were "uniquely in furtherance of the state courts' ability to perform their judicial functions");

Wright v. Oklahoma County, No. CIV-20-00346-JD, 2020 WL 8335672, at *8 (W.D. Okla.

August 31, 2020)(Dishman, J.)(explaining that issues relating to divorce, child support, and child

custody involve "important state interests," and that, because the case was still a "'pending civil

proceeding[] involving' a domestic-relations proceeding that is 'uniquely in furtherance of the

state courts' ability to perform their judicial functions,'" the court must abstain under Younger );

Tomczyk v. N.Y. Unified Ct. Sys., 19-CV-2753(JS)(AYS), 2019 WL 2437849, at *3 (E.D.N.Y.

June 10, 2019)(Seybert, J.)(concluding that Younger and Sprint require the court to abstain from

the plaintiff's federal complaint challenging rulings made in an underlying State court divorce and

child support case, because it "implicates the way that New York courts manage their own divorce

and custody proceedings -- a subject in which 'the states have an especially strong interest.'"

(quoting Falco v. Justs. of the Matrimonial Parts of Sup. Ct. of Suffolk Cnty., 805 F.3d 425, 427

(2d Cir. 2015))); Spageage Consulting Corp. v. Porrino, NO. 17-6299 (JLL), 2018 WL 1169133,

at *4 (D.N.J. March 6, 2018)(Linares, C.J.)(explaining that the United States Court of Appeals for

the Third Circuit has made clear in opinions issued after Sprint that district courts have no authority

to interfere with ongoing State court child support proceedings and that Younger abstention

applies); Jackson v . Nev. DHHS, 2018 WL 8367502, at *1 n.4 (explaining that it has long been

settled in the United States Court of Appeals for the Ninth Circuit that Younger abstention applies

to State court proceedings regarding paternity and enforcing child support orders); Thomas v.

Piccione, No. 13-425, 2014 WL 1653066, *3-4 (W.D. Pa., April 24, 2014)(Conti, C.J.)(applying

Sprint in a child custody case and concluding that, even though the State action was neither

criminal in nature nor a civil enforcement proceeding, it involved certain orders that were uniquely

in furtherance of the State court's ability to perform its judicial functions such that Younger

abstention applied).[16]

Here, it is undisputed that the Child Support Order from which Balderama seeks relief in

this federal action was borne of an ongoing domestic relations matter within the State district

court's jurisdiction, and relates to an order negotiated in the State court and that the State court

---

[16]Balderama cites Malhan v. Secretary United States Department of State, 938 F.3d 453 (3d Cir. 2019)("Malhan"), to argue that the Third Circuit does not hold that child support and spousal orders "fall squarely within the type of civil proceedings for which Younger abstention is appropriate." Objections at 4. Balderama reads Malhan too broadly. In Malhan, the Third Circuit concludes that Younger abstention was not warranted regarding claims that a State agency's disclosure of the father's bank records and administrative levy of his bank account violated the Child Support Enforcement Amendment and the Consumer Credit Protection Act, and where district court orders allegedly refused to allow the father to file counterclaims and offsets which violated his due process rights. See 938 F.3d at 463-65. Unlike the Third Circuit's decision in Malhan, the federal action here challenges the legality of the Child Support Order, an order uniquely in furtherance of the State court's ability to perform judicial functions. It follows that attempts to enjoin the State district court from any future contempt proceedings to enforce its allegedly illegal Child Support Order are impermissible. See Silver v. Ct. of Common Pleas of Allegheny Cnty., 802 F. App'x 55, 58-59 (3d Cir. 2020)(unpublished)(distinguishing Malhan from State court orders uniquely in furtherance of a State court's ability to perform judicial functions, such as orders that promote and protect the best interests of a child whose custody the State court previously had adjudicated and where State courts have a "duty of paramount importance to protect the child's best interest and welfare"); Spageage Consulting Corp. v. Porrino, 2018 WL 1169133, at *4 (explaining that the Third Circuit has made clear in opinions issued after Sprint that district courts have no authority to interfere with ongoing State court child support proceedings and disputes, and that Younger abstention applies).

currently supervises.[17]  See Gibson v. Lopez, 2022 WL 2158986, at *6.  The Child Support Order,

therefore, falls within the category of civil proceedings involving certain orders uniquely in

furtherance of the State courts' ability to perform their judicial functions.  See Gibson v. Lopez,

2022 WL 2158986, at *6; Sprint, 571 U.S. at 73.

Balderama next asserts in his Objections that, even if the State court proceedings at issue

here meet the Younger and Sprint conditions, the Defendants have acted in bad faith such that the

Younger abstention should not apply.  See Objections at 10-11.  Balderama realleges that: (i) the

New Mexico District Court and the New Mexico Human Services Department failed to follow

federal guidelines on initiating orders to show cause; (ii) the New Mexico Child Support

Enforcement Division provided lawyers to work against Balderama but none to work for him;

(iii) Balderama was denied legal representation; (iv) the New Mexico State courts have threatened

Balderama for speaking out in his defense; (v) the Child Support Enforcement Division

erroneously charged Balderama for a year of support even though he shared fifty/fifty custody with

his former spouse; and (vi) that the Child Support Enforcement Division tried to hold Balderama

to ransom by asking him if he had relatives who could pay his child support on his behalf.  See

Objections at 7.

The Supreme Court recognized in Younger and its companion case, Perez v. Ledesma, 401

U.S. 82 (1971), that "[o]nly in cases of proven harassment or prosecutions undertaken by state

---

[17]As Magistrate Judge Robbenhaar notes in the PFRD, the underlying custody and child support case remains open in State district court.  See PFRD at 18; Progress Motion at 1 (asserting as of January 17, 2023, that Balderama's State case continues to be heard); Langarcia v. Balderama, No. D-101-DM-2012-00080, Docket Report (showing parentage, custody and child support case commenced on January 27, 2012, and remains open).

officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown is federal injunctive relief against pending state prosecutions appropriate." Perez v. Ledesma, 401 U.S at 85 (citing Younger, 401 U.S. (no pincite given); Ex parte Young, 209 U.S. 123 (1908)). According to Younger, the irreparable injury must be "'both great and immediate.'" 401 U.S. at 46 (quoting Fenner v. Boykin, 271 U.S. 240, 243 (1926)). There are three factors that courts consider in determining whether a prosecution is commenced in bad faith or to harass: (i) whether it was frivolous or undertaken with no reasonably objective hope of success; (ii) whether the defendant's suspect class motivated the prosecution or whether the prosecution was in retaliation for the defendant's exercise of constitutional rights; and (iii) whether it was conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions. See Phelps v. Hamilton, 59 F.3d 1058, 1065-66 (10th Cir. 1995)(explaining that it is the plaintiff's "heavy burden" to overcome the Younger abstention bar by setting forth more than mere allegations of bad faith or harassment).

Here, it is undisputed that the State court proceedings at issue involve child custody and support and have been ongoing since 2012. See Langarcia v. Balderama, D-101-DM-2012-00080, Docket Report (showing that the parentage, custody, and child support case commenced on January 27, 2012, and remains open). Balderama has presented no evidence that the proceedings were undertaken in bad faith or to harass Balderama, nor has Balderama presented evidence that any of the proceedings were unjustified. Further, Balderama's allegations that the Defendants have acted in bad faith during the course of proceedings either are conclusory or identify issues

that have been addressed by the State district court and the Court of Appeals of New Mexico.[18] The Court, therefore, sees no error with Magistrate Judge Robbenhaar's conclusion that Balderama has not met the "heavy burden" of demonstrating that the underlying State court proceedings were undertaken in bad faith sufficient to overcome the <u>Younger</u> abstention presumption.

Finally, Balderama contends in his Objections that <u>Younger</u> abstention does not apply, because the State courts do not provide an adequate forum to hear his federal claims regarding his ability to work as an undocumented alien, and that the State is punishing him for making this argument in the State courts. <u>See</u> Objections at 10. The Court, however, sees no fault with Magistrate Judge Robbenhaar's conclusion that the State courts have provided an adequate forum to hear Balderama's alleged federal violations, as evidenced by Balderama having raised his arguments and theories before the State district court and having had them addressed on appeal before the Court of Appeals of New Mexico. <u>See</u> PFRD at 20. Balderama's argument that the State courts do not provide an adequate forum to hear his federal claims, therefore, is necessarily not sound. Because the Court concludes that <u>Younger</u> abstention applies to Balderama's claims for injunctive and declaratory relief, which encompass all of the relief he seeks, the Court will dismiss those claims without prejudice. <u>See</u> Goings v. Sumner Cnty. Dist. Atty's Off., 571 F. App'x at 639-40 ("Under our precedent, *Younger*-abstention dismissals have been treated as roughly akin to jurisdictional dismissals and, accordingly, have been considered to be *without*

---

[18]In addition to addressing arguments related to the Contempt Order, Balderama's ability to work as an unauthorized noncitizen, and the State district court's bad faith ruling, the Court of Appeals of New Mexico also addressed Balderama's arguments related to his alleged right to counsel during child support modification proceedings, various Equal Protection allegations, and the hearing officer's imputation of income to Balderama in its September 30, 2021, Memorandum Opinion. <u>See</u> <u>Langarcia v. Balderama</u>, 2021 WL 4480901 ¶¶ 5-25, at *2-5.

prejudice.")(emphasis in original)(citing <u>Morrow v. Winslow</u>, 94 F.3d 1386, 1389 (10th Cir.

1996)).

## II.      THE COURT OVERRULES BALDERAMA'S OBJECTIONS REGARDING THE PFRD'S RECOMMENDATIONS REGARDING DISMISSAL UNDER RULE 12(b)(6).

Magistrate Judge Robbenhaar makes additional recommendations regarding Balderama's

claims under 42 U.S.C § 1983 and the Defendants' arguments that he does not state a claim under

rule 12(b)(6).   Because the Court dismisses Balderama's claims on the basis of <u>Younger</u>

abstention, it will not adopt Magistrate Judge Robbenhaar's recommendation to dismiss

Balderama's claims with prejudice.  <u>See</u> <u>Goings v. Sumner Cnty. Dist. Atty's Off.</u>, 571 F. App'x

at 637.  The Court, nevertheless, overrules Balderama's objections to the PFRD as they relate to

his § 1983 claims and notes below where Balderama has not objected to Magistrate Judge

Robbenhaar's conclusions.  If the Court had determined that <u>Younger</u> abstention did not apply to

Balderama's requested relief, the Court would dismiss his § 1983 claims with prejudice for failure

to state a claim.

The Court first reviews Magistrate Judge Robbenhaar's recommendations regarding

Mr. Torrez, Judge Sommer, and McCracken.  Balderama concedes in his Objections that Mr.

Torrez, Judge Sommer, and McCracken "were not rightfully included in the case."  Objections at

1. Balderama, therefore, has waived appellate review of Magistrate Judge Robbenhaar's findings

and recommendation that Balderama's Amended Complaint does not allege any facts on which a

recognized § 1983 claim could be based against Mr. Torrez, Judge Sommer, and McCracken, and

that the Court should dismiss with prejudice Balderama's Amended Complaint as to those

Defendants.  The Court, nevertheless, has reviewed Magistrate Judge Robbenhaar's findings and

recommendations regarding Mr. Torrez, Judge Sommer, and McCracken, and determines that his

findings and recommendations are not clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion.  See Workheiser v. City of Clovis, 2012 WL 6846401, at *3.

The Court next reviews Magistrate Judge Robbenhaar's recommendations regarding Judge Hanisee.  Balderama makes no objections to Magistrate Judge Robbenhaar's findings and recommendation that the Amended Complaint does not allege any facts on which he may base a § 1983 claim against Judge Hanisee, and that the Court, therefore, should dismiss with prejudice Balderama's Amended Complaint as to Judge Hanisee.  Balderama, therefore, has waived appellate review on this issue.  See 2121 East 30th Street, 73 F.3d at 1059-60.  The Court, nevertheless, has reviewed Magistrate Judge Robbenhaar's findings and recommendations regarding Judge Hanisee, and determines that his findings and recommendations are not clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion.  See Workheiser v. City of Clovis, 2012 WL 6846401, at *3.

Finally, the Court reviews Magistrate Judge Robbenhaar's recommendations regarding Judge Bulman.  In his Amended Complaint, Balderama asserts: (i) that Judge Bulman's Child Support Order concludes that Balderama acted in bad faith by his ongoing efforts to avoid his child support obligation; (ii) that he asked for clarification about which of his actions demonstrated bad faith; and (iii) that Judge Bulman appeared to threaten Balderama with a bad faith ruling if Balderama continued to request that the child support order and arrears be reduced to what he believes is "allowed by state and federal law (probably $0)."  Amended Complaint ¶ 62, at 10.  See id. ¶¶ 56-62 at 9-11.  Balderama alleges in his Amended Complaint, and reasserts in his Objections, that Judge Bulman's characterization of his opinion regarding his child support obligations as "bad faith" has a chilling effect on his protected speech and that she, therefore, violated his First Amendment right to protected speech and Fourteenth Amendment right to due process, giving rise

to § 1983 liability.[19]   Amended Complaint ¶¶ 77-87, at 15-17; Objections at 11-16.   Balderama

requests in his Objections that the Court enter certain conclusions of law regarding his "chilled

speech" allegation against Judge Bulman.[20]   Objections at 13-16.

In the PFRD, Magistrate Judge Robbenhaar concludes that, to the extent Balderama's

Amended Complaint alleges a federal civil rights violation against Judge Bulman, Balderama has

not alleged facts that overcome the judicial immunity that protects Judge Bulman from § 1983

---

[19]Balderama appealed Judge Bulman's order to the New Mexico Court of Appeals.   See
Langarcia v. Balderama, No. A-1-CA-38571, 2021 WL 4480901 ¶¶17-25, at *3-5 (N.M. Ct. App.
September 30, 2021)(affirming Balderama's ability to work as an unauthorized alien, concluding
that the district court record contained no inconsistencies about a finding of Balderama's bad faith,
and vacating Balderama's contempt finding).   The Court of Appeals of New Mexico explained:

> The report adopted by the district court stated, "The Hearing Officer finds
> that, in good faith, Father is capable of at least half-time employment at the current
> Santa Fe County minimum wage[.]"   The district court clarified at the hearing that
> it believed Father made a good faith request to modify his child support obligation,
> which lead to the order decreasing his child support obligation.   This does not
> conflict with the district court's review of Father's objections to the child support
> order, which concluded that an unauthorized immigrant can be ordered to pay child
> support, and income can be imputed to Father if he is unemployed in bad faith in
> order to avoid child support.   The district court's finding was that Father's efforts
> to avoid *any* child support obligation -- in response to the order that he pay a
> *decreased* amount of child support -- were in bad faith.   This finding was [the] basis
> of the district court's denial of his request to decrease Father's obligation to zero
> dollars.   The record contains no inconsistences about a finding of bad faith
> regarding Father.

2021 WL 4480901 ¶ 18, at *4 (emphasis in original)(first alteration in Langarcia v. Balderama).

[20]In his Objections, Balderama elaborates on his chilled speech allegations and legal
theories, including alleging that Judge Hanisee also chilled his speech by affirming the district
court's order.   See Objections at 16.   Additional arguments and legal theories in objections are not
appropriately raised.   See Martinez v. Sims, 489 F. Supp. 3d 1270, 1272 (D.N.M. 2020)
(Browning, J.)("In this circuit, theories raised for the first time in objections to the magistrate
judge's report are deemed waived.")(quoting United States v. Garfinkle, 261 F.3d 1030, 1031
(10th Cir. 2001)).

liability.  PFRD at 11-14.  Balderama's Objections do not address this conclusion and instead focus

on incidental observations Magistrate Judge Robbenhaar makes separately in a footnote, i.e., that

evidentiary rulings do not implicate First Amendment rights nor does a court's refusal to adopt a

petitioner's argument.  Objections at 11-16 (referring to PFRD at 13 n.14).  Balderama's focus,

therefore, is misplaced, because the sole legal basis of Magistrate Judge Robbenhaar's PFRD as

to Balderama's § 1983 claims against Judge Bulman is that she is entitled to judicial immunity and

that Balderama's Amended Complaint does not allege facts to overcome the judicial immunity

that protects her from § 1983 liability.  PFRD at 11-14.  Balderama has not addressed nor made

specific objections to Magistrate Judge Robbenhaar's findings and recommendation that

Balderama's Amended Complaint fails to state a recognized § 1983 claim on which relief can be

granted as to Judge Bulman and that the Court, therefore, should dismiss with prejudice his

Amended Complaint as to Judge Bulman.[21]  Balderama, therefore, has waived appellate review as

---

[21]Magistrate Judge Robbenhaar notes additionally that Judge Sommer and Judge Hanisee
also are entitled to judicial immunity as an alternative ground for dismissal of Balderama's claims
against them.  See PFRD at 11 n.12.  A dismissal on the basis of judicial immunity falls under rule
12(b)(6), and the Court, therefore, would dismiss Balderama's claims with prejudice.  See Wang
v. Delphin-Rittmon, No. 3:17-CV-586 (JAM), 2023 WL 2624351, at *7 (D. Conn. March 24,
2023)("'[A]bsolute judicial immunity is a non-jurisdictional bar to a claim asserted against a
federal judge stemming from official judicial acts and is thus subject to dismissal under Rule
12(b)(6) for failure to state a claim upon which relief can be granted.'" (quoting Smith v. Scalia,
44 F. Supp. 3d 28, 40 n.10 (D.D.C. 2014), aff'd, 2015 WL 13710107 (D.C. Cir. 2015))).  Because
the Court has determined that Younger abstention applies and that the Court should dismiss
Balderama's claims without prejudice, however, the Court will not dismiss Balderama's claims
with prejudice.  Thus, to the extent that Judge Bulman, Judge Sommer, and Judge Hanisee's
requests that the Court dismiss Balderama's claims against them for failure to state a claim require
the Court to dismiss his claims with prejudice, the Court will grant in part and deny in part their
Motions.
     Magistrate Judge Robbenhaar further notes that Mr. Torrez, whom Balderama sues in his
official capacity, is entitled to absolute immunity under the Eleventh Amendment, which "bars a
suit for damages in federal court against a State, its agencies, and its officers acting in their official
capacities, even when the action is brought under § 1983."  PFRD at 11 n.12 (citing U.S. Const.

to this issue.  See 2121 East 30th Street, 73 F.3d at 1059-60.  The Court, nevertheless, has reviewed

Magistrate Judge Robbenhaar's findings and recommendations regarding Judge Bulman, and

determines that his findings and recommendations are not clearly erroneous, arbitrary, obviously

contrary to law, or an abuse of discretion.  See Workheiser v. City of Clovis, 2012 WL 6846401,

at *3.

In conclusion, the Court, having conducted its de novo review of the case and for the

reasons discussed above, concludes that Balderama's Objections to the Magistrate Judge's PFRD

lack a sound basis in the applicable law and in the relevant facts.  Accordingly, the Court overrules

the Objections.  The Court concludes that the Younger abstention doctrine bars Balderama's

requests for injunctive and declaratory relief, and that this Court lacks subject-matter jurisdiction

pursuant to rule 12(b)(1).  The Court, therefore, will dismiss without prejudice all claims against

the Defendants seeking injunctive and declaratory, or other relief, affecting the State of New

Mexico district court child support proceedings for lack of subject-matter jurisdiction.

Additionally, the Court adopts the Magistrate Judge's PFRD and concludes that

Balderama's Amended Complaint does not state a claim for relief pursuant to rule 12(b)(6) against

Mr. Torrez, Judge Bulman, Judge Sommer, Judge Hanisee and McCracken, and that either judicial

---

amend XI; Will v. Mich. Dep't of State Police, 491 U.S. 58, 70-71 (1985)).  Eleventh Amendment
immunity also applies to McCracken, who is the Acting Director of the Child Support Enforcement
Division, a division of the New Mexico Human Services Department, a New Mexico State
Agency, and whom Balderama sues in her official capacity.  To the extent that Balderama requests
prospective injunctive relief, the doctrine which the Supreme Court announced in Ex parte Young,
209 U.S. 123 (1908), overrides the State's Eleventh Amendment immunity, and permits the Court
to hear Balderama's claims.  Because the Court has determined that it should not exercise
jurisdiction over any of Balderama's claims pursuant to Younger abstention, however, the Court
will not hear Balderama's claims that overcome Eleventh Amendment immunity.

and/or Eleventh Amendment immunity bar all § 1983 claims against them.  Because the Court has dismissed Balderama's claims for lack of subject-matter jurisdiction pursuant to <u>Younger</u>, however, the Court will not dismiss with prejudice Balderama's Amended Complaint against the Defendants, but notes instead that, if <u>Younger</u> abstention did not apply, it would dismiss the Amended Complaint with prejudice for failure to state a claim.  Finally, having determined that the Court should dismiss Balderama's Amended Complaint pursuant to rules 12(b)(1) and 12(b)(6), the Court will dismiss as moot Balderama's SJ Motion and Progress Motion.

**IT IS ORDERED** that: (i) the Plaintiff's Objections to Proposed Findings and Disposition, filed February 15, 2023 (Doc. 38), are overruled; (ii) the Plaintiff's Amended Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 and Request for Declaratory Relief Pursuant to 28 U.S.C. § 2201(a), filed February 4, 2022 (Doc. 7), is dismissed without prejudice; (iii) Defendants the Hon. Shannon Bulman and the Hon. Mary Marlow Sommers' Motion to Dismiss, filed April 11, 2022 (Doc. 13), is granted in part and denied in part; (iv) Defendant the Hon. J. Miles Hanisee's Motion to Dismiss, filed May 9, 2022 (Doc. 24), is granted in part and denied in part; (v) the Plaintiff's Motion for Summary Judgment, filed May 13, 2022 (Doc. 26), is dismissed; (vi) the Plaintiff's Motion to Progress, filed January 17, 2023 (Doc. 33), is dismissed; and (vii) Final Judgment will be entered separately.

_____
UNITED STATES DISTRICT JUDGE

*Parties and counsel:*

Javier Balderama
Santa Fe, New Mexico

    *Plaintiff pro se*

Daniel J. Macke
Macke Law & Policy, LLC
Albuquerque, New Mexico

*Attorney for Defendants Shannon Bulman, Mary Marlowe Sommer, and J. Miles Hanisee*

Raul Torrez
  New Mexico Attorney General
Scott C. Cameron
  Assistant Attorney General
Office of the Attorney General
Albuquerque, New Mexico

*Attorneys for Defendant Raul Torrez*

John Robert Emery
New Mexico Human Services Department
Santa Fe, New Mexico

*Attorneys for Defendant Betina McCracken*